**Donna Christensen Chavez,** *Plaintiff-Appellee,*

*vs.*

**Marshall Tome, dba The Navajo Nation Enquiry,** *Defendant-Appellant.*
Decided September 18, 1987

## OPINION

*Before Tso, Chief Justice, Bluehouse and Austin, Associate Justices.*

*Samuel Pete, Esq. Window Rock, Arizona for the Appellant; Paul E. Frye, Esq., Albuquerque, New Mexico for the Appellee.*

*Opinion delivered by Tso, Chief Justice.*

This libel case is on appeal from a final judgment entered by the Crownpoint District Court on February 11, 1987. On October 27, 1986, a judgment on the issue of liability was entered against the defendant, Marshall Tome, for failure to comply with the discovery rules and the court's orders compelling discovery. The court also awarded $1,020.00 in attorney's fees to plaintiff, Donna Chavez. The issue of damages was tried before a jury, which awarded Chavez $10,000.00 in damages. The court further ordered Tome to print a retraction in his newspaper, *The Navajo Nation Enquiry.* Tome is appealing the district court's October 27, 1986 finding of liability and award of attorney's fees, and the court's February 11, 1987 final judgment awarding actual and punitive damages, and order to print a retraction.

Marshall Tome, doing business as *The Navajo Nation Enquiry* (Enquiry), published a series of articles about Donna Chavez during 1985 and 1986. The focus of the articles was a case in which Chavez, an attorney in the Navajo Nation Department of Justice, represented the Navajo Nation. Chavez filed a complaint for libel against Tome on April 1, 1986, claiming that Tome had recklessly and maliciously defamed her by publishing a variety of false statements. The statements in question were published in August, September, and November of 1985, and they accused Chavez of lying to a judge, and bribing a judge to obtain favorable rulings. It was also reported in the

March 1986 issue of *The Navajo Nation Enquiry* that Chavez had been "ousted by the Ute Tribe" for causing problems throughout the community. Chavez sought monetary damages and a retraction of the alleged defamatory statements.

Tome retained Margaret Wilson as counsel, and he filed an answer and a demand for a jury trial on May 5, 1986. On July 25, 1986, Tome was served with a Notice of Deposition Duces Tecum through his attorney, which requested that Tome produce thirty-six categories of documents at the deposition scheduled for August 19, 1986. Included in the request for documents was the policies and procedures for *The Navajo Nation Enquiry*. On August 4, 1986, Chavez filed a motion to personally serve Tome with a Subpoena Duces Tecum to assure that the documents would be available at the deposition. On August 6, 1986, the court denied the motion by ordering that service of the Notice of Deposition Duces Tecum on Tome's counsel was sufficient to assure that all requested documents would be produced by Tome at the deposition.

The deposition was held on August 19, 1986, in Gallup, New Mexico. Tome was represented at the deposition by Earl Waits, Ms. Wilson's associate. Waits stated that he was appearing with Tome for the deposition only and that Tome would be "retaining other counsel to proceed in this matter." (Tome Deposition at p. 5.) However, Ms. Wilson would continue to represent Tome until substitute counsel was obtained.

Tome appeared at the deposition without any of the documents requested in the Notice of Deposition Duces Tecum. The record does not show that Tome filed any motions for protective orders, nor any objections, at anytime regarding the documents. When asked why he did not bring the requested material to the deposition, Tome stated that he had other things to do which he thought were more important than coming to the deposition. (Tome Deposition at p. 26.) A three hour recess was taken to allow Tome to go to his office in Window Rock and get the documents. Tome returned from Window Rock with only the back issues of the *Navajo Nation Enquiry* stating that his brother had taken the rest of the documents to another location. (Tome Deposition at p. 100.)

On September 8, 1986, Ms. Wilson moved to withdraw as counsel for Tome. Attached to the motion was a letter written by Ms. Wilson's doctor, dated August 14, 1986, which stated that Ms. Wilson was advised to stop working at this time so that she could recover from injuries. The letter, we presume, was written to someone other than the district court. [1] The district

---

1. The letter states that Ms. Wilson was involved in a single car accident on December 15, 1985, which resulted in physical injuries. On July 20, 1986, she was re-injured while riding in a small engine aircraft. Since that time she has been unable to perform the tasks necessary in the practice of law. The last paragraph states: "Because the usual treatment modalities have not been successful . . . I have advised her to stop working at this time. . . . In the meantime I feel it is medically necessary that her electricity be turned on and that she be able to heat her house."

court denied the motion on September 17, 1986, finding that the motion did not comply with Rule 27 of the Navajo Rules of Civil Procedure. Rule 27 requires that new counsel be named before a motion to withdraw can be granted.[2] The motion filed by Ms. Wilson did not name new counsel. In denying the motion, the court directed Ms. Wilson to advise Tome to act quickly and obtain new counsel. The court then allowed Ms. Wilson two weeks to file another motion to withdraw if Tome did not secure counsel. Ms. Wilson did not file another motion to withdraw.

On September 17, 1986, the court also found that Tome had previously been ordered to produce certain discovery materials which Tome had not produced and made available to Chavez. The court was referring to its order of August 6, 1986. The court ordered Tome to make those materials available to Chavez within fifteen days.

On September 22, 1986, Chavez filed a "Motion To Compel Production of Documents," which the court granted on September 24, 1986. Tome was ordered to produce the documents requested in the Notice of Deposition Duces Tecum by October 1, 1986, otherwise "judgment shall be entered against him upon the application of plaintiff." Order of September 24, 1986.

Also on September 22, 1986, Chavez filed a "Motion To Compel Disclosure Of Alleged Sources And To Compel Answers To Questions Asked At Deposition." This motion was granted on September 24, 1986. In the Order Compelling Discovery, the court ordered Tome to disclose the sources for each article concerning Chavez in the *Enquiry,* the financial and business aspects of the *Enquiry,* and to provide Chavez with a witness list. The court further warned Tome that if the orders were not complied with by October 7, 1986, "judgment shall be entered against him on application of plaintiff." Order of September 24, 1986.

On October 9, 1986, Chavez filed an "Application for Judgment" based upon Tome's failure to comply with the September 17 and 24 orders. On October 27, 1986, the district court entered judgment for Chavez on the issue of liability, and the court awarded Chavez $1,020.00 in attorney's fees. The attorney's fees were for the costs of the motions to compel discovery. The court found that Tome had not complied with four of its orders: the order of August 6, 1986, ordering Tome to produce documents; the order of September 17, 1986, compelling Tome to produce documents; and the order of September 24, 1986, compelling discovery of information disclosed by Tome at his deposition. The court also found that Tome had not made any motions for reconsideration, or other objections to the orders to compel production of the documents or to compel discovery. Neither had Tome filed a motion

2. Whenever counsel has once appeared either in open court or by motion to represent a party, such counsel shall be responsible to the Court for his actions and shall not be allowed to withdraw from the case except by order of the Court upon written motion naming new counsel and stating good cause. Rule 27, NRCP.

for a protective order regarding the Notice of Deposition Duces Tecum.

On November 6, 1986, Tome secured new counsel and made a motion to set aside the October 27, 1986 judgment. Tome claimed that his prior counsel had inadequately represented him and he argued that that was sufficient grounds for setting aside a judgment. The motion was denied and on January 9, 1987, a jury trial was held on the issue of damages. The jury found that Chavez had suffered actual damages of $8,823.87. The damages were for mental suffering, emotional distress, and loss of reputation. An additional $1,176.13 was awarded as punitive damages. Aside from the jury's monetary award, the court ordered Tome to print a retraction on the front page of three consecutive issues of his newspaper, *The Navajo Nation Enquiry.*

## I. Failure to Comply with Discovery

### A.

On October 27, 1986, the district court entered judgment against Tome and awarded Chavez attorney's fees, after finding that Tome had consistently failed to comply with the discovery rules and the court's orders compelling discovery. Tome argues that his failure to comply with the rules and orders was due to the incapacity of his counsel, Ms. Wilson, and that it is unjust to punish him, by entering judgment against him, for the failings of his counsel. Tome further argued that he was denied due process because the notices of the discovery orders were sent to his counsel and not to him personally. The Court is unpersuaded by these arguments.

The district judge has the discretion to impose sanctions, including entry of judgment against a defendant for failure to obey discovery orders. *Four Corners Auto Sales, Inc., et al. v. Begay,* 4 Nav. R. 100 (1983). Our review on appeal is thus limited to deciding whether the district judge abused her discretion in entering judgment and attorney's fees against Tome. Absent a clear abuse of discretion, this Court will not disagree with a district judge's decision. *In the Matter of Contempt of: Arnold Sells,* 5 Nav. R. 37 (1985).

Entry of judgment against Tome is not an abuse of discretion, if the judge found that Tome flagrantly disregarded the court's orders compelling discovery, or if Tome flagrantly abused the discovery process. *Four Corners Auto Sales,* 4 Nav. R. at 103. Entry of judgment is also proper if Tome willfully, or in bad faith, failed to comply with the court's discovery orders. A Notice of Deposition Duces Tecum, which requested documents, was served upon Tome, through his counsel Ms. Wilson, shortly after it was filed on July 25, 1986. Ms. Wilson had not attempted withdrawal at the time of service,

thereby Chavez rightfully served the notice on Tome's counsel. At least three weeks elapsed between service and the deposition date of August 19, 1986. During these three weeks Tome did not file any objections to the request for discovery of documents. A party served with a Notice of Deposition Duces Tecum has the burden to object, otherwise lack of action will be construed as a consent to comply with the discovery request. An unchallenged discovery request has the effect of a court order. Tome was ably represented and his failure to motion for a protective order, or otherwise object, means he consented to produce documents requested in the Notice of Deposition Duces Tecum. After such consent, a failure to comply with the discovery request, without adequate excuse, can be sufficient for a finding of willfulness to support entry of judgment.

Tome appeared at the deposition without the documents. During questioning, Tome admitted that he had received the Notice of Deposition Duces Tecum from his attorney several days prior to the deposition date. (Tome Deposition at p. 26.) When asked why he had not brought the documents, and specifically the policies and procedures, he responded that he had other things to do which he considered more important than coming to the deposition. Nonetheless, a three hour recess was taken so Tome could cure his noncompliance by getting the documents from his office in Window Rock. However, Tome returned without the documents, most notably the policies and procedures, despite his earlier testimony that they were located in Window Rock. (Tome Deposition at p. 34.)

The district judge could rightfully conclude from these facts that Tome's intent from the beginning was not to cooperate with discovery. Obviously, Tome was aware of the type of documents that he had to produce at the deposition, and he had sufficient time to gather those documents. Otherwise, Tome had sufficient time to file a motion for a protective order or to file an objection to Chavez's request for documents. The record is clear that Tome personally knew he was to produce certain documents, and he consented to produce those documents, yet he deliberately disregarded the discovery request by failing to produce the documents.[3] His statement, that he had other important things to do rather than come to the deposition, is another indication of his willful refusal to abide by the discovery rules.

The district judge must consider all the circumstances of the case to determine whether the defendant acted flagrantly or willfully in disregarding the discovery process, or in disobeying the court's discovery orders. Tome's refusal to produce documents at his deposition was not the only evidence considered by the district judge. The record shows that Tome failed to obey

3. At one point during Tome's deposition, Mr. Waits assured Chavez's counsel that, "we will provide the documents that you're requesting." This statement was made prior to the three hour recess. Tome Deposition at p. 31.

court ordered discovery on two occasions and he disobeyed two subsequent orders compelling discovery. All these orders were served upon Tome through his counsel of record, Ms. Wilson. The transcript of Tome's August 19, 1986 deposition is replete with evidence showing evasive testimony.

The two orders compelling discovery, that were entered on September 24, 1986, are of particular significance. One of these orders compelled production of the same documents requested in the Notice of Deposition Duces Tecum filed on July 25, 1986. The record shows that the order compelling production of documents was the fourth request made by Chavez for those documents. No party to a lawsuit should have to undergo unnecessary expense and effort in an attempt to consistently discover the same materials while the other party simply ignores the discovery orders. At some point the judge must impose sanctions to insure that the court's rules and orders are complied with and that the party requesting discovery is not unduly prejudiced. The judge must exercise control and management over the cases to insure that cases move in a timely and orderly fashion. Otherwise recalcitrant parties only impede the timely and orderly administration of justice, and in the process deprive other litigants in other cases of scarce judicial resources. In addition, both orders compelling discovery warned Tome that his failure to comply by a certain date would result in entry of judgment for Chavez. Again he ignored this warning and chose not to comply with the court's orders.

After a review of the facts and the transcript of the deposition, this Court agrees that Tome flagrantly and willfully disregarded the discovery process and the district court's orders. We hold that the district court did not abuse its discretion by entering judgment on liability against Tome under these circumstances.

### B.

Tome has also raised the incapacity of his counsel as a reason for his disregard of the discovery process and for disobeying the court's orders. A party cannot avoid the consequences of the acts or omissions of his counsel. *See Tracey v. Heredia,* 4 Nav. R. 149 (Window Rock D. Ct. 1983); *Sutherland v. ITT Continental Baking Co., Inc.,* 710 F. 2d 473 (8th Cir. 1983). The incapacity of counsel will not allow a party to escape the consequences of having freely selected that particular counsel. A party to a suit has a responsibility to maintain contact with his counsel and assure that his case is being handled properly. The court cannot be made the watchdog of the attorney-client relationship to assure that the client has made a good choice as to his attorney. This would be inconsistent with our system of representative litigation. Further, it would be unfair to penalize the opposing party and make them relitigate all the issues, when there is an action for malpractice available

to any party who feels that their counsel's conduct has fallen below what would be reasonable under the circumstances.

Tome had a responsibility to maintain contact with his counsel, and the counsel had a similar responsibility to Tome. The court cannot dictate or oversee the relationship between Tome and his counsel, Ms. Wilson. When Tome became aware of Ms. Wilson's intention to withdraw he should have immediately obtained other counsel. The record shows that Tome knew, at least at the time of deposition, of Ms. Wilson's intent to withdraw, yet he took no steps to protect his own interest. We hold that incapacity of Tome's counsel, under the facts of this case, is not a valid excuse for disobeying the court's discovery orders or for ignoring the discovery process.

### C.

Tome also argues that his right to due process under the Indian Civil Rights Act, 25 U.S.C. §1302(8) (1968), was violated when notices of the proceedings were sent to his counsel of record and not to him. Due process requires that a party be given notice of any proceeding and afforded an opportunity to be heard. *Yazzie, et al. v. Jumbo, et al.,* 5 Nav. R. 75 (1986); *Navajo Engineering and Construction Authority v. Noble,* 5 Nav. R. 1 (1984). It is an established rule that notice to the counsel of record serves as notice to the client. *Tracey v. Heredia,* 4 Nav. R. at 149 (Window Rock D. Ct. 1983); *Smith v. Ayers,* 101 U.S. 320 (1880).

The district court record listed Ms. Wilson as Tome's counsel of record. All the court orders were mailed to Ms. Wilson's office, and none were returned to the court. The court could presume that Ms. Wilson was receiving her mail, and had notice of the orders. We hold that Tome had notice of the proceedings and the due process requirement of notice under the Indian Civil Rights Act and the Navajo Bill of Rights, 1 N.T.C. §3 (1986 Amendment), were satisfied.

### D.

The final issue arising from the October 27, 1986 judgment concerns the attorney's fees awarded to Chavez. The rule within the Navajo Nation is that each party is responsible for their own attorney's fees. *Hall v. Arthur,* 3 Nav. R. 35 (1980); *John, et al. v. Herrick,* 5 Nav. R. 129 (1987). One recognized exception to this rule is where the case presents a special set of circumstances. The courts must exercise restraint in allowing recovery of attorney's fees, but where evidence shows a special set of circumstances, the awarding of attorney's fees is appropriate.

In this case, the district court found that there had been a flagrant disregard of the discovery rules and the court's orders. Tome's disregard of the rules and

disobedience of court orders forced Chavez to incur additional costs to force compliance. We hold that a failure to comply with the discovery rules and the court's orders, is a special set of circumstances justifying an award of attorney's fees. It is appropriate to charge Tome for the unnecessary costs he forced Chavez to incur, because of his willful failure to comply with the rules and orders. The district court's award of attorney's fees in the amount of $1,020.00 is affirmed.

## II. Damages

### A.

The United States Supreme Court has held that compelling a newspaper to print that which "reasons" tells them not to publish is an unconstitutional violation of the First Amendment's guarantee of Freedom of the Press. *Miami Herald Publishing Company v. Tornillo*, 418 U.S. 241, 41 L. Ed. 2d 730 (1974). Similarly, the Navajo Bill of Rights, 1 N.T.C. §1 (1986 Amendment), and the Indian Civil Rights Act, 25 U.S.C. §1302(1) (1968), guarantees the right of the press to be free of governmental intervention. The choice of material to be printed is a protected exercise of editorial control and judgment and the government is prevented from regulating this process. A responsible press is desirable, but it cannot be legislated by the Navajo Tribal Council or mandated by the Navajo courts. This does not mean that the press is free to print libelous material; because the government does have a legitimate interest in protecting an individual's good name. A person who proves libel or slander may recover monetary damages for the actual harm suffered. This financial liability will serve as a deterrent and help assure that the press acts in a responsible manner.

We believe the printing of a retraction can serve as a method of mitigating damages. If the publisher voluntarily prints a retraction, the monetary damages may be reduced. To be effective the retraction must be published in the same manner and calculated to reach the same audience as the original material.

The decision to print a retraction rests with the publisher, and the court is prohibited by the Navajo Bill of Rights and the Indian Civil Rights Act from ordering a retraction. We hold that the district court erred in ordering that a retraction be printed.

### B.

The remedy for libel is an action for damages. The damages may be actual, special, or punitive. The types of actual injury inflicted by the defamatory

statements includes harm to reputation and public standing, personal humiliation, mental and emotional anguish and suffering. The finding of injury must be supported by competent evidence. However, because of the type of injury caused, the evidence need not prove an actual dollar amount of injury. The jury has the discretion to determine the actual dollar amount of injury by considering all the evidence. The jury's finding is limited only by the general rule that the award not be excessive, and that it be supported by competent evidence. This Court will not overturn a jury's determination of actual damages, unless it finds that the award is unsupported by the evidence. Tome has not provided a transcript to support his position that the jury's award of actual damages is not supported by the evidence. See Rule 9(b)(1), NRCA P. Tome has not met his burden of showing that the jury's award was not supported by the evidence.

## C.

Punitive damages do not compensate for an injury, but rather are used to punish bad conduct and deter similar conduct in the future. The awarding of punitive damages may tend to inhibit a free press. Therefore, punitive damages are appropriate only in cases where it is shown that the publisher acted with knowledge of the falsehood of his statements, or acted with reckless disregard for the truth. In this case, the issue of liability was not heard on the merits. Tome's knowledge of the falsehood of his statements, or his reckless disregard for the truth, were not established. For these reasons we hold that the district court erred in awarding punitive damages.

The Crownpoint District Court's October 27, 1986 judgment, on the issue of liability and the award of $1,020.00 for attorney's fees, is affirmed. The awarding of $8,823.87 for actual damages is affirmed. The award of $1,176.13 in punitive damages and the court's order that a retraction be printed are reversed.

Affirmed in part, and reversed in part.