**GREENWOOD EXPLORATIONS, LTD.,**
**Plaintiff/Appellee,**

v.

**MERIT GAS AND OIL CORPORATION, INC., Benmor International, Inc., and Sam Mor, a/k/a Sam Merit, a/k/a Sam Moalen, an individual, Defendants/Appellants.**

**No. 85–2634.**

United States Court of Appeals, Tenth Circuit.

Jan. 14, 1988.

---

H.I. Aston, of Tulsa, Okl., for defendants/appellants.

Daniel Doris, of Tulsa, Okl., for plaintiff/appellee.

Before MOORE and BARRETT, Circuit Judges, and ANDERSON,[*] District Judge.

ALDON J. ANDERSON, Senior District Judge.

## INTRODUCTION

This case is an appeal from the District Court's denial of defendants' Motion to Vacate Judgment under Rule 60(b) or in the alternative, Motion for New Trial under Rule 59. On April 5, 1985, the District Court for the Northern District of Oklahoma, Thomas R. Brett, Judge, entered its Findings of Fact and Conclusions of Law in the present case, holding in plaintiff's favor and awarding plaintiff $11,180,000.00 in damages, plus costs and attorney fees. Throughout the litigation, defense of the case was virtually non-existent due to defendants' failure to cooperate—or even communicate—with their hired counsel. Defense counsel appeared at trial but was unable to present any serious arguments because of his lack of familiarity with the case, through no fault of his own. Upon the court's entry of judgment in plaintiff's favor, defendants requested that the court either vacate the judgment or grant a new trial. Defendants argued before the District Court, first, that they had not been heard at trial because of mistake, inadvertence, surprise and excusable neglect, and second, that the damages awarded plaintiff were inconsistent with both Oklahoma law and the parties' agreement. The court denied defendants' motions, finding that defendants were guilty of gross carelessness in their handling of the case. It is from that ruling that defendants now appeal.

## FACTS

On December 28, 1983, plaintiff filed its Complaint alleging that on September 22, 1981, it entered into a contract with defendants whereby defendants agreed to drill seven oil wells and have them completed by November 18, 1981. The agreement provided for liquidated damages to be taken from production revenues, in the amount of $1,000.00 per uncompleted well per day. (Agreement, paragraph 16.) When the November 18 deadline passed with none of the wells completed, damages began accruing at the rate of $7,000.00 per day until May 1, 1982, when one well was completed. (Trial Transcript, p. 9) Damages thereafter accrued at the rate of $6,000.00 per day until the filing of the Complaint, at which time the six wells were still uncompleted. Plaintiff's Amended Complaint requested liquidated damages from the uncompleted wells amounting to $4,760,000.00.[1]

Defendants filed an Answer which emphasized that the $1,000.00 per well per day was to be taken from the production revenues. Since there were not yet any such revenues, defendants argued, no liability existed under the liquidated damages clause.[2]

* Honorable Aldon J. Anderson, Senior Judge, United States District Court, District of Utah, sitting by designation.

1.  Plaintiff also requested $1,610,000.00 for the stock it allegedly issued to defendant as part of the transaction, and $250,000.00 in damages for

a gas gathering system which defendant agreed to provide but allegedly never did.

2.  Defendants also responded that plaintiff had not transferred to them certain property, known as the Hathcoat property, as agreed. (Defendants' Answer, p. 2)

Trial was scheduled for November 26, 1984. On November 21, defense counsel, Kenneth G. Shouse, moved the court for permission to withdraw from the case. The court granted Shouse's motion and, also on November 21, Eric W. Spooner entered as defendants' new counsel. In response to this change, the court continued the trial from November 26, 1984 to March 25, 1985.

On January 17, 1985, Spooner sent a letter to defendants informing them that he would withdraw as counsel and would do no more work for them on the case. On March 15, Spooner sent another letter to defendants telling them that trial was still set for March 25 and requesting permission to withdraw from the case. Spooner has stated in his affidavit that defendants have never responded to either of these letters and have never given him permission to withdraw.

On March 18, Spooner moved the court for permission to withdraw. In his Motion he stated:

[T]he client has wholly, intentionally and wantonly failed to communicate and cooperate with attorney in the pursuit of a defense in [this case]. The client has wholly failed to respond to attorney's requests for information. The client has wilfully defied the attorney's advice by not answering interrogatories and producing documents lawfully requested by opposing counsel. The client has left the attorney with the undeniable impression that his service, counsel, representation and advice are no longer necessary, required or desired by the client in the pursuit of this action.

On March 19, Spooner sent a letter to defendants informing them that he had filed a Motion to Withdraw and again told defendants that the trial was still set for March 25. (Exhibit D to Kurt Johnson's affidavit of September 27, 1985.) In his affidavit, Kurt E. Johnson, general counsel for defendant Benmor, claims that, upon receipt of the letter, he assumed that Spooner's motion to withdraw would be granted and that the trial would be continued until defendants could obtain new

counsel. Apparently on the basis of that assumption, defendants took no action on the case at that time. In fact, Judge Brett did not grant the motion, though the trial was continued two days until March 29. In his affidavit, Johnson claims that he did not learn until March 22 that the trial was still scheduled. He says that, by that time, it was too late to get in touch with defendant Sam Merit.

Spooner appeared at the trial and again requested the judge to allow him to withdraw. Since defendants had not responded to Spooner's letters, Spooner was still the attorney of record, absent court permission to withdraw. The judge told him that he was free to do so, but that he would prefer that he stayed on so the case could be resolved expeditiously. Spooner agreed to stay on, but, since defendants had not cooperated throughout the litigation, he was able to do no more than ask perfunctory questions. (Trial Transcript, pp 4, 8, 9, 12, 15.) Defendants claim, on the other hand, that Spooner was already discharged and therefore they were not represented at trial. Defendants also claim that Spooner did not raise the proper defenses at trial.

On April 5, 1985, Judge Brett issued his Findings of Fact and Conclusions of Law and his Judgment based thereon, holding that defendants breached the contract, that plaintiff performed its obligations under the contract, and that plaintiff should be awarded $11,181,000.00 as damages, with interest at 10.08% per annum from March 27, and attorney's fees.

Defendants claim that they did not receive a copy of the Findings and Conclusions until July 29. They say that they then promptly filed their Rule 59 and 60 motions the next day, and therefore did not violate the requirement in Rule 59(b) that a motion for new trial be filed within ten days after entry of judgment. Defendants requested a new trial on grounds that they were unrepresented at trial since Spooner was no longer attorney of record, that Spooner did not raise the proper defenses, and that the damages award was not in accordance with the parties' agreement. Defendants also filed a Rule 60(b) motion

to vacate judgment, again on the grounds that they were unrepresented at trial. Judge Brett rejected defendants' motions, stating that their carelessness did not amount to mistake, inadvertence, surprise or excusable neglect.

## DISCUSSION

Rule 60(b) provides that the court may relieve a party of final judgment for mistake, inadvertence, surprise or excusable neglect, or for any other reason justifying relief from operation of the judgment. Rule 59(a)(2) says that in a case tried without a jury the court may grant a new trial for any reason for which rehearings have traditionally been granted in equity suits. Rule 59(b) requires that the motion for a new trial be filed within ten (10) days after entry of judgment.

Defendants plead surprise since they assumed that the March 25 trial date would be continued and insist that they were unable to file the motion for a new trial on time since they didn't receive a copy of the court's Findings and Conclusions until more than three months after entry of judgment.

■ A motion to vacate judgment under Rule 60(b) is left almost entirely up to the discretion of the trial court. *Thompson v. Kerr–McGee Refining Corp.*, 660 F.2d 1380, 1385 (10th Cir.1981). In *Cessna Finance Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1445 (10th Cir.1983), this court explained the standards for evaluating a Rule 60(b) motion. It said that granting relief under Rule 60(b) is an extraordinary procedure. *Id.* at 1444. *See also V.T.A. Inc. v. Airco, Inc.*, 597 F.2d 220, 223 (10th Cir.1979). The movant must plead and prove the mistake or excusable neglect. On the other hand, a Rule 60(b) motion should be liberally construed and every effort should be made to try cases on their merits. *See Thompson*, 660 F.2d at 1385.

A Rule 59 motion is subject to essentially the same standards. Its grant or denial is in the trial court's discretion. *Baum v. Great Western Cities, Inc. of New Mexico*, 703 F.2d 1197, 1211 (10th Cir.1983). In the present case, the trial court found that the facts did not justify relief from the order.

On review of the trial court's determination, the appellate court should review only if there was a "manifest abuse of discretion" on the trial court's part. *Caribou Four Corners, Inc. v. Truck Insurance Exchange*, 443 F.2d 796, 799 (10th Cir. 1971). The trial court is in a better position to evaluate the facts of the case than is this court. *Mid–West Underground Storage, Inc. v. Porter*, 717 F.2d 493, 502 (10th Cir.1983).

■ We find that the district court did not abuse its discretion. The second attorney to represent defendants tried to withdraw from the case because of defendants' disinterest and lack of cooperation in the case. Defendants never communicated with counsel and never responded to his request for permission to withdraw. Counsel appeared at trial at the court's request, in order to expedite resolution of the case. The court granted continuances for discovery deadlines and trial dates in order to be fair to defendants, but defendants ignored the deadlines anyway. Defendants were aware of the case, the discovery deadlines, and the trial dates, but consistently refused to act on them. Only after an $11 million judgment was handed down against them did they express any interest in the case. The only reasons they offer for their behavior are that they assumed a substantial continuance would be granted upon Spooner's Motion to Withdraw, and that they did not receive a copy of the court's Findings and Conclusions until July 29. These are not explanations; they are only excuses. A modicum of diligence, such as a telephone call, would have enabled defendants to confirm or deny their "assumptions" and to determine if the court had yet entered its order. What would otherwise be excusable neglect is not such when it is just another act in a long course of indefensible behavior. By late March, 1985, defendants should have realized that they were walking on thin ice and been particularly diligent to protect themselves. Defendants give no reasons for their inaction

before March 1985 and the excuses they give for their behavior after that are merely post hoc rationalizations of indefensible conduct. As this court said in *Cessna*, 715 F.2d at 1444, litigants are not free to appear before the court at their pleasure. They must exercise reasonable diligence in observing the court's rules of procedure.

It is established that, in default cases, the party requesting Rule 60(b) relief must show that he has a meritorious defense. *Cessna*, 715 F.2d at 1445. The diligent party should be protected from delay and uncertainty. Since Spooner did question and cross-examine witnesses, it cannot be said that defendants defaulted. Nonetheless, defendants made no serious effort to defend the suit and it is reasonable to consider on this appeal whether they have demonstrated the existence of a meritorious defense.

The only defenses presented were that the agreement provided that damages were to come from production revenues and that plaintiff failed to transfer the Hathcoat property. (Defendants' Answer.) In September 1985, defendant Sam Merit filed a certification in Support of Vacation of Judgment in which he alleged that he and other defendants were released from their obligations to perform under the contract by plaintiff's alleged breach. The district court was not persuaded by this argument at trial and we do not feel that, without more, it constitutes a meritorious defense.

Even if defendants did have a meritorious defense, we would still uphold the district court's denial of their Rule 59 and 60(b) motions. While defendants insist that the judgment was improper, they offer no reasonable explanation for their failure to defend the case. A Rule 60(b) motion is not to be used as a substitute for appeal. *Morris v. Adams–Millis Corp.*, 758 F.2d 1352, 1357 (10th Cir.1985). The movant must still show that his conduct was excusable. These defendants have not done this.

As we said in *Porter*, 717 F.2d at 502, the trial court is in a better position than the appellate court to evaluate the mov-

ant's conduct. We see no abuse of the trial court's discretion on the facts of this case.

Affirmed.